USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/09/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
GUSTAVO SIERRA,

                    Petitioner,              11 Civ. 2244 (DAB)
          -v-                                S3 04 Cr. 219 (DAB)
                                             ORDER AND MEMORANDUM

UNITED STATES OF AMERICA,

                    Respondent.
-----------------------------X
DEBORAH A. BATTS, United States District Judge.

     Before the Court is Petitioner Gustavo Sierra ("Petitioner"
or "Sierra")'s Motion to vacate, set aside or correct his
sentence pursuant to 28 U.S.C. § 2255 (the "Petition").  Without
a plea agreement, Sierra pleaded guilty to Counts One and Two of
a Superseding Indictment on July 12, 2006. On May 27, 2008
Sierra was sentenced by this Court to a term of imprisonment of
135 months on each of Courts One and Two, to run concurrently.

     Sierra claims that he received ineffective assistance of
counsel in violation the Sixth Amendment because his counsel
failed to press for a non-Guidelines sentence based on (1) the
need to avoid unwarranted sentencing disparities, (2)
Petitioner's "over forty" age, which he claims automatically put
him at a lower risk of recidivism, (3) extraordinary family
circumstances, (4) harsh conditions of confinement, and (5) the
collateral consequences of his alienage. Sierra further claims
that his counsel failed to ensure he understood that nature and

                              1

consequences of his plea to Count Two. He also petitions on the ground that his appellate attorney provided ineffective assistance of counsel. The Government submits that Sierra's Petition is without merit and should be denied is all respects.

For the reasons below, Petitioner's motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct his sentence is hereby DENIED in its entirety.

## I. FACTUAL BACKGROUND

From December 2003 through February 2004, Petitioner Sierra conspired with others to distribute kilogram quantities of heroin. The heroin originated in Venezuela, and was supplied to sellers in the New York City area via a co-defendant in Florida. Sierra sold approximately seven kilograms of heroin on consignment that he had acquired from co-defendant Alberto Sierra (no relation to Petitioner). (Presentence Investigation Report dated August 15, 2007 ("PSR"), ¶¶ 21-31, 41-43.) As part of the drug dealing operation, Sierra also collected and delivered drug proceeds. Pursuant to court-authorized wiretaps, Drug Enforcement Administration ("DEA") agents intercepted a series of telephone calls in December 2003 where Petitioner discussed past and future transactions concerning drug proceeds. (PSR ¶¶ 21-25.) Sierra travelled to the Dominican Republic in

late December 2003 and his ex-wife and co-defendant collected drug proceeds on his behalf during his absence.

On February 20, 2004 over eight kilograms of heroin were seized by DEA agents in Florida when one of Petitioner's co-defendants was arrested with two co-conspirators. (PSR ¶ 65.) On February 24, 2004 Sierra was arrested in New York and remanded into federal custody. (PSR at 1.)

Sierra was indicted on March 9, 2004 and a Third Superseding Indictment was filed May 18, 2004. Count One of the Third Superseding Indictment charged Sierra with Conspiracy to Distribute and Possess with Intent to Distribute Heroin in violation of 18 U.S.C. §846; Count Two charged him with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). From December 2005 through his sentencing in March 2008, Sierra was represented by Bernard Alan Seidler, Esq.

On May 16, 2006 the Government provided Sierra with a Pimentel letter setting forth the Government's position as to the Sentencing Guideline Range applicable in his case. Pursuant to § 2S1.1, application note 6 and § 3D1.2(c), Counts One and Two were grouped together. According to § 2D1.1, Count One had an applicable offense level of 36 because the total quantity of heroin for which the Defendant was responsible was at least ten kilograms but less than 30 kilograms. Section 2S1.1 applied to

3

Count Two as follows: the applicable offense level was 24 (the laundered funds were more than $1 million but less than $2.5 million); increase of six levels because Defendant knew the laundered funds were the proceeds of narcotics distribution; increase of two levels because Defendant was convicted under 18 U.S.C. § 1956. The applicable offense level for Count Two was thus 32. Pursuant to § 3D1.3(a), the offense level applicable to Group One was 36 (the highest offense level of the Counts in the Group). Because the Defendant was a manager or supervisor, the offense level was increased by three. Assuming the Defendant adequately accepted responsibility, the offense level would be reduced by a total of three. The Government therefore submitted that the total applicable Guidelines offense level was 36. In conjunction with the Defendant's Criminal History Category of I, the anticipated sentencing range set forth in the Pimentel letter was 188 to 235 months.

On July 12, 2006, without the benefit of a plea agreement, Sierra pleaded guilty to Counts One and Two of the Third Superseding Indictment. Prior to accepting his plea, the Court conducted extensive questioning to ensure that Sierra was competent to enter a plea; that his plea was knowing and voluntary; that he understood the charges he faced and his rights under the Constitution and laws of the United States;

4

that he understood the consequences of his plea and the process
by which the Court would determine his sentence; that his plea
was not motivated by forced, threats or inducements; and that
his criminal conduct satisfied the elements of each Count of the
Third Superseding Indictment and was supported by an independent
basis in fact. (See Plea Tr.) The Court also informed Sierra
specifically of the maximum and mandatory minimum sentences that
could apply to the offenses of conviction; confirmed that Sierra
understood that the Government had calculated the applicable
Guidelines range as reflected in the Pimentel letter and that he
understood that such calculation was not binding on the Court;
and ensured that Sierra knew that any estimate or prediction
that he may have received as to what his sentence would be could
be wrong. (Id.)

On August 15, 2007 the PSR was submitted to the Court. The
Offense Level Computation used in the PSR for Count Two differed
from that in the Pimentel letter. In calculating the offense
level for Count Two, the PSR noted that under Section 2S1.1(a)
"the base offense level is obtained from the underlying offense
from which the funds were derived if the defendant committed the
underlying offense." (PSR ¶ 84.) The underlying offense here was
conspiracy to distribute heroin, and approximately ten to 30
kilograms of heroin were attributable to the Defendant. The

offense level specified in the Drug Quantity Table under §

2D1.1(c)(2) sets a base on offense level of 36 for that amount

of heroin. From there, the PSR made the same offense level

adjustments as the Government did in its _Pimentel_ letter:

increase of two because the Defendant was convicted under 18

U.S.C. § 1956; increase of three for a leadership role; decrease

of three for acceptance of responsibility. The total offense

level, as determined by the PSR, was therefore 38. In

conjunction with the Defendant's Criminal History Category of I,

the Guidelines Sentencing Range was 235-293 months.

In a letter dated September 12, 2007 Sierra's counsel Mr.

Alan Seidler indicated that he objected to paragraphs 84 and 85

of the PSR because it was "double counting in as much as the

Probation Department is computing the defendant's base offense

level based on the underlying amount of narcotics." (Def. Sent.

Sub. of Sep. 12, 2007.)

Following his plea, Sierra proffered with the Government,

seeking to qualify for relief from the mandatory minimum ten-

year sentence under 18 U.S.C. § 3553(f) and Advisory Sentencing

Guidelines Section 2D1.1(b)(7). Based on Sierra's proffer and

other evidence, the Government advised the Court that Sierra

qualified for safety valve relief (a decrease of two levels) and

further submitted that he should not receive a role enhancement.

(Govt. Sent. Sub. of March 14, 2008.) The Government advised the Court that it calculated the applicable total offense level to be 33, based on the same calculations set out by the Probation Department in the PSR, minus two levels for the safety valve adjustment and without the three-level enhancement for a leadership role. (Id.) Thus, according to the Government's March 14, 2008 sentencing submission, the applicable Guidelines Range was 135 to 168 months.

Sierra appeared before the Court for sentencing on May 27, 2008, and his counsel re-iterated the double counting objection. Because Counts One and Two were grouped, Mr. Seidler argued, the PSR and the Government's March 14, 2008 Sentencing Submission erroneously ascribed Count Two a higher base offense level. Grouping mandated that the amount of narcotics associated with the conspiracy charged in Count One be used to determine the base offense level for Count Two, as opposed to the offense level being determined by the amount of narcotics actually associated with Sierra's money laundering activities. After hearing from the Parties and indicating that the factors contained in 18 U.S.C. § 3553(a) had been considered, the Court found that the correct Total Offense Level was 33 and the applicable Criminal History Category was I. The Court sentenced Sierra to 135 months of incarceration on each of Counts One and

Two, to run concurrently. The Court also imposed concurrent
terms of three years supervised release for each of Counts One
and Two.

Petitioner appealed his conviction, and it was affirmed by
the Second Circuit Court of Appeals on May 21, 2010. Represented
by new counsel, Randa Meyer, Esq., Sierra again raised his
double counting argument. He asserted that the quantity of drugs
represented by the sum of money he laundered should determine
the base offense level for Count Two, rather than the total
amount of drugs in the underlying narcotics conspiracy. Sierra
also argued that his sentence created an unwarranted disparity
with his co-defendants. The Second Circuit rejected both
arguments and affirmed Sierra's sentence. <u>United States v.
Menendez</u>, 600 F.3d 263, 266-70 (2d Cir. 2010). Following the
mandate from the Second Circuit, Sierra timely filed the instant
petition to vacate, set aside or correct his sentence pursuant
to 28 U.S.C. § 2255.


## II. DISCUSSION

A. Relevant Law

In <u>Strickland v. Washington,</u> 466 U.S. 668 (1984), the
Supreme Court established a two part test to determine whether a
defense counsel's assistance was ineffective in violation of the

8

Sixth Amendment.  First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness. . . under prevailing professional norms." Id. at 691-92.  Second, the defendant must show that he suffered prejudice as a result of defense counsel's deficient performance. Id. at 689.  Prejudice is established where "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Id. at 694; see also United States v. Venturella, 391 F.3d 120, 135 (2d Cir. 2004).  The burden is on the defendant to establish both elements. Strickland, 466 U.S. at 687. "In applying [the ineffective assistance] standard, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Venturella, 391 F.3d at 134 (quoting United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004)).

A defense counsel's strategic decisions will not support an ineffective assistance claim, so long as they were reasonably made. Strickland, 466 U.S. at 689 ("[The] defendant must overcome the presumptions that, under the circumstances, the challenged action might be considered sound trial strategy.") Actions or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.

United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999)

(citing Strickland, 466 U.S. at 689); see also United States v.

Smith, 198 F.3d 377, 386 (2d Cir. 1999) (rejecting an

ineffective assistance claim where defense counsel's decisions

not to offer or challenge certain evidence were tactical).


B. Alleged Ineffective Assistance of Trial Counsel

Sierra asserts that his trial counsel Mr. Seidler was

constitutionally deficient because he failed to press for a non-

Guidelines sentence based on (1) the need to avoid unwarranted

sentencing disparities, (2) Petitioner's "over forty" age, (3)

extraordinary family circumstances, (4) harsh conditions of

confinement, and (5) collateral consequences of his alienage.

Sierra also claims that his counsel failed to ensure he

understood the nature and consequences of his plea to Count Two.


1. Failure to Avoid Sentencing Disparities

Sierra claims that his counsel was ineffective because he

failed to press for a non-Guidelines sentence based on the need

to avoid unwarranted sentencing disparities. He argues that his

sentence of 135 months, which is greater than that of each of

his co-defendants, resulted in an unwarranted disparity. Sierra

also advanced this argument in his appeal, and it was squarely

10

rejected by the Second Circuit. Any disparity in sentencing was not unwarranted, the Second Circuit explained, because Sierra was not similarly situated to his co-defendants who "either (1) pleaded guilty pursuant to a plea agreement, (2) pleaded guilty to conspiracy to distribute heroin or narcotics but not to conspiracy to launder money, (3) pleaded guilty to conspiracy to launder money but not to conspiracy to distribute, or (4) were exceptionally honest in admitting to the crimes, and brought to the court's attention unique facts, such as HIV-positive status and a resulting reduced risk of recidivism." United States v. Menendez, 600 F.3d at 269. Because any disparity between Sierra's sentence and those of his co-defendants was not unwarranted, his counsel was not ineffective simply because Sierra received a higher sentence. To the extent his Petition is based upon his sentencing disparity, the Petition is DENIED.

2. Alleged Failure to Raise Petitioner's "Over Forty" Age[1]

Sierra asserts that his counsel was ineffective because he "failed to state that Defendant was over forty years of age

---

[1]    Petitioner reiterates this argument as Ground Two in claiming that the sentence imposed was unreasonable because it was "greater than necessary to incapacitate [him from] Criminal Behavior." (Pet. at 5.) The Court here addresses this argument as part of Petitioner's ineffective assistance of counsel claim. To the extent it is not an ineffective assistance of counsel

which automatically put Defendant in a lower rate of recidivism in comparison to younger Defendant(s)." (Pet. at 4.) Petitioner's claim is unavailing. During his safety valve proffer statements with the Government, Petitioner admitted that he began working with a co-defendant in the narcotics business in about 1997 or 1998; he was approximately 42 years old at the time. He further proffered that he left the United States for the Dominican Republic in 1998 because he was afraid of being arrested for his drug dealing. (Govt. Sent. Sub. of March 14, 2008). When Sierra was approximately 48 years old, in 2003, he returned to the United States and resumed drug dealing activities which led to his arrest and conviction for the instant offense. Given that Sierra was over 40 when he began his illegal narcotics activities and resumed drug dealing at age 48, his counsel was not ineffective for failing to argue that Sierra was at a low risk of recidivism because he was over 40 years of age. To the extent that Sierra's Petition is based on an alleged lower risk of recidivism for his age group, it is DENIED.

---

claim, it is waived because it was not raised on appeal. See Bousley v. United States, 523 U.S. 614, 621-22 (1998) ("claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice").

3.   Alleged Failure to Argue Extraordinary Family Circumstances

Sierra next argues that his counsel was ineffective because he failed to move for a non-Guidelines sentence based on his allegedly extraordinary family circumstances. Specifically, Petitioner asserts that his daughter has a "strange virus in her brain," (Pet. at 4), and it was erroneous for his counsel to have not advocated for a lesser sentence on that basis.

The Advisory Sentencing Guidelines explain that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. Although a court may depart downward from the applicable Guidelines range on the basis of extraordinary family circumstances, such circumstances "must be reserved for situations that are truly extraordinary." United States v. Walker, 191 F.3d 326, 338 (2d Cir. 1999). Downward departures are generally impermissible "where other relatives could meet the family's needs or where a defendant's absence did not cause a 'particularly severe' hardship." Urena-Urena v. United States, 09 Civ. 6504 (DAB), 2010 WL 3034198, at *(4 (S.D.N.Y. July 26, 2010) (internal citations omitted).

During Sierra's presentence interview with the Probation Department, he explained that his then-13-year-old daughter was "sickly" because she had a "virus in her brain." (PSR ¶ 105.) He

13

further explained that his daughter lived in Spain with her
mother, who worked as a manicurist. (Id.) He did not allege in
his presentence interview or at his sentencing proceeding, nor
does he allege now, that his daughter's mother is unable to
support her emotionally or financially. There is nothing in the
record that suggests that Sierra's family circumstances were so
"extraordinary" as to warrant a departure from the applicable
Guidelines range, and it was therefore not erroneous for his
counsel to fail to seek a below-Guidelines sentence on that
basis. To the extent that Sierra's Petition seeks to amend or
vacate his sentence on this basis, his Petition is DENIED.


4. Alleged Failure to Move for Departure Based on Alleged Harsh
Conditions of Confinement

    Petitioner alleges that his counsel provided ineffective
assistance because he did not argue that the allegedly
"overcrowded and violence" conditions of confinement at the
Metropolitan Detention Center ("MDC")—where he was housed prior
to sentencing and designation to the Big Spring Correctional
Institution—warranted a below-Guidelines sentence. Contrary to
Sierra's assertions, however, his counsel did discuss the harsh
conditions to which Sierra was subjected at the MDC. In his
sentencing submission dated March 18, 2008, Petitioner's counsel

14

Mr. Seidler noted that "[t]he MDC [was] overcrowded," with insufficient showers, toilets and wash basins. (Def. Sent. Sub. of March 18, 2008.) He noted that the "prison area has a roach and fly problem" but "[n]o exterminator is ever called in;" "[m]old and mildew are ever present on the prison interior walls;" and "[t]he mops used to clean the bathroom are washed in the same washing machine used to wash the clothes." (Id.) He also submitted that Sierra had "been ill for much of his incarceration." (Id.)

"[P]re-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001). Such departures have been granted where "the conditions in question [were] extreme to an exceptional degree and their severity [fell] upon the defendant in some highly unusual or disproportionate manner." United States v. Mateo, 299 F.Supp. 2d 201, 208 (S.D.N.Y. 2004). While Sierra's counsel advocated in his sentencing submission with regard to the allegedly harsh conditions of confinement to which Sierra was subjected, his counsel was not ineffective simply because the Court did not find a downward departure warranted on that basis. There is nothing in the record to indicate that the MDC conditions affected Sierra "to an exceptional degree" or in some "highly

15

unusual or disproportionate manner." <u>Mateo</u>, 299 F.Supp 2d at 208. Accordingly, to the extent that Sierra's Petition is based upon the allegedly harsh conditions of confinement, that Petition is DENIED.


5. Alleged Failure to Argue Collateral Consequences of Alienage

Petitioner asserts that his sentencing counsel was ineffective because he did not argue for a below-Guidelines sentence on the ground that certain benefits available to incarcerated United States citizens are not available to deportable aliens. In particular, Petitioner argues that his counsel should have moved for a sentencing departure because he was not "eligible to participate in valuable programs to aid and to be afforded to reintegrate to society in a positive manner, i.e. 500 hrs drug program, six months halfway house, early release." (Pet. at 4.)

However, collateral consequences of alienage are "not a permissible basis for departure" unless they are "extraordinary in nature or degree." <u>United States v. Restrepo</u>, 999 F.2d 640, 641, 644 (2d Cir. 1993). Petitioner here does not allege that he is facing extraordinary collateral consequences that are not imposed on other incarcerated deportable aliens. Instead, the conditions of which he complains apply generally to deportable

16

aliens in custody. Such "run of the mill" consequences, United
States v. Duque, 2007 WL 4315755, at *1 (2d Cir. 2007), provide
no basis for a downward departure and his counsel was therefore
not ineffective for failing to argue for a below-Guidelines
sentence on that basis. Accordingly, to the extent Sierra's
Petition is based on the collateral consequences of his
alienage, it is DENIED.


6. Alleged Failure to Ensure Petitioner Understood the Nature
and Consequences of His Plea to Count Two

     In his reply submission, Sierra claims that his counsel
failed to ensure he understood the nature and consequences of
entering a plea of guilty to Count Two. (Reply at 1.) Because
"the submissions of a pro se litigant must be construed
liberally and interpreted to raise the strongest arguments that
they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d
471, 474 (2d Cir. 2006), the Court will review this claim
despite the fact that Sierra did not raise it in his original
Petition.

     To succeed on this claim Petitioner must show that his plea
was not knowing and voluntary because the advice he received
from counsel was not within acceptable standards. Parisi v.
United States, 529 F.3d 134, 138 (2d Cir. 2008) (citing U.S.C.A.

17

Const. Amend. 6.) At Sierra's July 12, 2006 plea hearing, he was
asked by the Court if he "had a full opportunity to discuss
[his] case with [his] attorney and to discuss the consequences
of entering a plea of guilty." (Plea Tr.) Sierra confirmed that
he had, and that he was satisfied with the performance of his
attorney. (Id.) Prior to accepting Sierra's guilty plea, the
Court described the rights he would be giving up if he entered a
plea of guilty; the Court asked the Government to list the
elements of each Count and confirmed that Sierra understood
those elements. (Id.) The Court also informed Sierra
specifically of the maximum and mandatory minimum sentences that
could apply to the offenses of conviction; confirmed that he
understood that the Government had calculated the applicable
Guidelines range as reflected in the Pimentel letter and that he
understood that such calculation was not binding on the Court;
and ensured that he knew that any estimate or prediction that he
may have received as to what his sentence would be could be
wrong. (Id.)

      Throughout his plea proceedings, Sierra confirmed that he
understood his rights, the consequences of his plea, and that he
was entering his plea of guilty knowingly and voluntarily. There
is nothing in the record to suggest that Sierra did not
understand the nature and consequences of his plea. To the

contrary, the record demonstrates that Sierra knowingly and voluntarily pleaded guilty to Counts One and Two of the Superseding Indictment. United States v. Torrellas, 455 F.3d 96, 103 (2d Cir. 2006) (a "straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to [the] consequences" of a plea and to conclude that the plea was knowing and voluntary). Accordingly, Sierra's Petition is DENIED to the extent it is based on his counsel's alleged ineffectiveness in ensuring he understood the nature and consequences of his guilty plea.


C. Alleged Ineffective Assistance of Appellate Counsel

Finally, Sierra argues that his appellate attorney, Ms. Randa Maher, Esq., provided ineffective assistance because she "failed to properly investigate or make a full discovery in Defendant's Appeal" and "was attending other cases and excluding defendant's case." (Pet. at 4, 14.) Petitioner does not explain, however, what investigations he alleges his appellate counsel should have undertaken, what they might have uncovered, or how they might have led to a different outcome. While submissions of pro se litigants are to be construed liberally, Triestman, 470 F.3d at 474, conclusory allegations about counsel's ineffectiveness are not an appropriate basis for a habeas

19

petition. <u>Haouari v. United States</u>, 510 F.3d 350, 354 (2d Cir. 2007) ("Airy generalities, conclusory assertions and hearsay statements will not suffice"). Sierra's appellate counsel here advocated on his behalf with respect to the applicable base offense level for the money laundering charge in Count Two, and also appealed his sentence on the ground that it created unwarranted sentencing disparities. While his counsel did not raise other claims on appeal, appellate counsel is not required to argue all non-frivolous issues on appeal. Instead, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986). "[A] petitioner may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker . . . ." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). Petitioner has failed to do so here, and failed to demonstrate that the assistance he received from his appellate counsel was ineffective. Accordingly, Sierra's Petition is DENIED on this ground.

## III. CONCLUSION

For the above reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct his sentence is hereby DENIED in its entirety.  Because the Court's Order is based on legal conclusions supported by the present record and file, no evidentiary hearing is required.  See Rule 8(a), Rules Governing § 2255 Proceedings.  The entire Petition is hereby DISMISSED and the Clerk is DIRECTED to close the docket in this case.


SO ORDERED.


DATED:   New York, New York

May 9, 2012

DEBORAH A. BATTS
United States District Judge

21